## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**IN RE: E. I. DU PONT DE NEMOURS AND COMPANY C-8 PERSONAL INJURY LITIGATION**

**Case No. 2:13-md-2433**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth A. Preston Deavers**

**This document relates to:**
*Joseph and Donna Hall v. E. I. du Pont de Nemours and Co.,* **Case No. 2:23-cv-869**
*Ian and Heather Lynn v. E. I. du Pont de Nemours and Co.,* **Case No. 1:22-cv-751**

### MOTIONS IN LIMINE ORDER

**Motions in Limine Nos. 8, 9, 16, 18**
**(*Hall*, Case No. 2:23-cv-869, ECF Nos. 78, 79, 86, 88, respectively;**
***Lynn*, Case No. 1:22-cv-751, ECF Nos. 81, 82, 89, 91, respectively)**

This matter is before the Court on multiple motions in limine filed by Plaintiffs in preparation for the consolidated trial in *Hall* and *Lynn* beginning on September 9, 2024. The Court rules on the motions as follows in this omnibus Motions in Limine Order.

## I.   STANDARD OF REVIEW

### A.  Motions in Limine

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).

Motions in limine allow the Court to rule on the admissibility of evidence before trial to expedite proceedings and provide the parties with notice of the evidence on which they may not

rely to prove their case. *Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist.*, C2-08-CV-0663, 2011 WL 4753414, at * 1 (S.D. Ohio Oct. 7, 2011) (Marbley, J.). To prevail on a motion in limine, the movant must show that the evidence is clearly inadmissible. *Id.* If the movant fails to meet this high standard, a Court should defer evidentiary rulings so that questions of foundation, relevancy, and potential prejudice may be resolved in the context of trial. *Henricks v. Pickaway Corr. Inst.*, No. 2:08-CV-580, 2016 WL 4577800, at *2 (S.D. Ohio Sept. 2, 2016) (Marbley, J.).

Whether to grant a motion in limine is within the discretion of the trial court; the Court may reconsider the admissibility of evidence and even change its ruling on a motion in limine "as the proceedings give context to the pretrial objections." *Id.* (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012); *Bennett*, 2011 WL 4753414, at * 1).

### B. Applicable Rules of Evidence

Federal Rules of Evidence 401, 402, and 403 are all applicable in this Order. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. A court may exclude relevant evidence under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### II. PLAINTIFFS' PRESERVATION MOTION IN LIMINE NO. 8 TO PRECLUDE EVIDENCE OF DUPONT'S *LEACH* CLASS ACTION SETTLEMENT PAYMENTS/FUNDING COMMITMENTS AND SUBSEQUENT SETTLEMENT PAYMENTS FOR THE C8 PERSONAL INJURY LITIGATION

In Motion in Limine No. 8, Plaintiffs ask the Court to preclude DuPont from introducing

"any evidence, testimony, or argument of counsel relating to any payments or funding commitments made by DuPont under the *Leach* Class Action Settlement Agreement or the C8 Personal Injury Litigation Settlement Agreement (reached on February 13, 2017), including but not limited to during any punitive damages phase." (MiL No. 8, ECF No. 78, PageID 5882–83.)[1] Plaintiffs explain that they and DuPont are parties to the *Leach* Class Action Settlement Agreement ("*Leach* Settlement Agreement"), and DuPont agreed to make certain cash payments under the Agreement. (*Id.* PageID 5883.) Plaintiffs argue that such payments, as well as the C8 Personal Injury Litigation Settlement Agreement payments, are not relevant to the current cases under Rule 401 because, among other reasons, the payments did not represent compensation paid to the Halls or Lynns for Mr. Hall's and Mr. Lynn's testicular cancer. (*Id.* PageID 5886.) Even if the Court were to determine evidence of payments was relevant, Plaintiffs urge the Court to nevertheless exclude it because such evidence will do nothing more than prejudice them, confuse the jury, waste time, and result in undue delay. (*Id.* PageID 5887–88 (citing Fed. R. Evid. 403).)

Partly, DuPont responds that it "does not intend to introduce evidence of the C-8 Personal Injury Litigation Payments and believes that such should be shielded from the jury, as this Court has previously recognized." (MiL No. 8 Resp., ECF No. 99, PageID 7476.) To the extent that Plaintiffs' Motion in Limine No. 8 asks the Court to preclude DuPont from introducing payments related to the C8 Personal Injury Litigation Settlement Agreement that portion of the Motion is **DENIED AS MOOT**.

But seemingly reading Plaintiffs' Motion more broadly as urging the Court to exclude "*Leach* Settlement information" and "evidence associated with the *Leach* Agreement," DuPont

---

[1] Plaintiffs filed Motion in Limine Nos. 8, 9, 16, and 18 in both *Hall* and *Lynn*. For ease of reading, the Court cites only to the *Hall* papers in this Motions in Limine Order unless otherwise noted.

opposes it in part. (MiL No. 8 Resp., PageID 7477.) DuPont argues such evidence is "highly relevant to whether DuPont consciously disregarded a great probability of substantial harm and whether DuPont intentionally inflicted emotional distress on Plaintiffs." (*Id.*) DuPont contends evidence related to the *Leach* Settlement Agreement came in during the *Vigneron* and *Abbott/Swartz* trials in phase I. (*Id.* PageID 7478.) Evidence related to the *Leach* Settlement Agreement must come in so that the jury receives a complete picture, DuPont urges. (*Id.* PageID 7480–81.)

As the parties note, Plaintiffs' eighth Motion in Limine raises issues that have been raised and ruled on previously in this MDL. (MiL No. 8, PageID 5882; MiL No. 8 Resp., PageID 7476; *see also* Excerpts from the Transcript of Proceedings of First Final Pretrial Conference in *Vigneron*, ECF No. 78-2; *Swartz*, Case No. 2:18-cv-00136, ECF Nos. 101, 118, 129.) This Court ruled that in phase II of the *Vigneron* trial—the punitive damages phase—evidence of payments that DuPont made under the *Leach* Settlement Agreement was admissible. (ECF No. 78-2 at 26:3–17.) Then, the plaintiff could "argue back that this was not something done out of the goodness of the heart; it was a settlement." (*Id.*)

As for phase I in the *Vigneron* trial, the Court reserved its ruling, explaining it would revisit these issues depending on the evidence in the plaintiff's case. (*Id.* at 31–32.) The Court made clear that its concern was ensuring the jury received the whole story, not part—"What I really don't want is the jury getting half the story, either way. One half is, you [DuPont] didn't do enough. The other half is, we did all this. And they really—if they're going to hear one part, they're going to have to hear the whole thing." (*Id.* at 29:10–14.) The Court made similar rulings during the final pretrial conference before the *Abbott/Swartz* trials. (*Swartz*, Case No. 2:18-cv-00136, Transcript of Second Final Pretrial Conference, ECF No. 141 at 44:20–23 ("the one thing

that jurors really don't like and I think it can lead to bad decision making is if they get half a story"); *id.* at 44:11–48:5.) The Court also reminded the parties that it does not want the jury to hear about other cases for many reasons. (*Id.* at 45:15–24.)

The parties point to no fact-specific reasons or changes in the law that suggest the Court should deviate from its previous rulings. Thus, the Court rules **IN ACCORDANCE WITH** its previous rulings in this MDL on these issues. As in the *Vigneron* and *Abbott/Swartz* trials, if the parties need to revisit the issue during trial, they may do so at sidebar.

### III. PLAINTIFFS' MOTION IN LIMINE NO. 9 TO PRECLUDE DUPONT FROM INTRODUCING ANY EVIDENCE RELATING TO SPECULATIVE ALTERNATIVE CAUSES FOR PLAINTIFFS' TESTICULAR CANCERS

In Motion in Limine No. 9, Plaintiffs request that the Court prevent DuPont from introducing evidence on "speculative alternative cause for Plaintiffs' testicular cancers." (MiL No. 9, ECF No. 79, PageID 5925.) Plaintiffs rely on Rules 401 and 403 to argue such evidence is irrelevant and would serve no purpose other than to mislead and confuse the jury. (*Id.*) They explain that the parties' experts, Dr. Kamal S. Pohar and Dr. Craig Nichols, agree that there are few established risk factors for testicular cancer, but that DuPont has sought to insert evidence of "other speculative causes of cancer other than C8, such as asbestos, chemical or other work exposures, and smoking." (*Id.* PageID 5928.)

***Smoking.*** DuPont responds that it has not and does not intend to argue that Mr. Hall's smoking is a risk factor for his testicular cancer, nor does it intend to present evidence related to Mr. Hall's smoking for that purpose. (MiL No. 9 Resp., ECF No. 100, PageID 7485.) But such evidence, DuPont goes on, is relevant to Mr. Hall's health, damages, his fear of cancer recurrence, and Mrs. Hall's loss of consortium claim. (*Id.*) Plaintiffs' complaint alleges that the C-8 releases have caused and continue to cause Mr. Hall "emotional and mental stress, anxiety, and fear of current and future illness, including but not limited to, fear of significantly increased

risk of cancer and other disease." (*Id.* (citing Compl., ECF No. 1, ¶ 153).) He claims damages in the form of "reduced life expectancy, extreme anxiousness, and fear of death." (*Id.* (citing Compl., ECF No. 1, ¶ 9(j)).) DuPont argues that these allegations fall under the category of cancerphobia and require Mr. Hall to prove that he knows he possesses an increased statistical likelihood of developing cancer and based on that knowledge has a reasonable apprehension which manifests in emotional distress. (*Id.* PageID 7485–86 (citing *Slane v. MetaMateria Ptnrs, LLC*, 176 Ohio App. 3d 459, 467 (10th Dist. 2008); *Lavelle v. Owens-Corning Fiberglas Corp.*, 507 N.E.2d 476, 480 (Ohio Com. Pl. 1987)).)[2]

The Court need not address DuPont's arguments about Mrs. Hall's loss of consortium claim because the parties recently jointly moved to dismiss that claim. (ECF No. 112.)

As for DuPont's arguments that evidence about Mr. Hall's smoking is relevant to his damages, the Court will not exclude such evidence on Plaintiffs' Motion in Limine No. 9 because Plaintiffs argue for exclusion on different grounds in this Motion. See the discussion *infra* on Plaintiffs' Motion in Limine No. 18.

***Workplace Exposures.*** DuPont states that it does not intend to affirmatively introduce evidence of either Mr. Hall's or Mr. Lynn's workplace exposures.

Motion in Limine No. 9 is **DENIED AS MOOT** in its entirety.

## IV.  PLAINTIFFS' PRESERVATION MOTION IN LIMINE NO. 16 TO PRECLUDE EVIDENCE OF DUPONT'S PAYMENTS, SETTLEMENTS, OR FUNDING COMMITMENTS RELATED TO OTHER FOREVER CHEMICAL ACTIONS

In their sixteenth Motion in Limine, Plaintiffs move the Court for an order precluding DuPont from introducing evidence relating to any payments or funding commitments made by DuPont under any settlement or court order unrelated to the facts or circumstances of this MDL

---

[2] MDL 2433 plaintiffs who were injured in Ohio, as Mr. Hall was, have had and will have their cases tried under Ohio law. (MDL 2433, DMO No. 3, ECF No. 3551.)

litigation, the *Leach* Settlement Agreement, or the C8 Personal Injury Litigation Settlement

Agreement, including during the punitive damages phase. (MiL No. 16, ECF No. 86.) Plaintiffs

reference examples of large monetary settlements DuPont paid including: a June 2023 settlement

to resolve public water system claims as part of the aqueous film-forming foam multi-district

litigation; a November 2023 settlement agreement with the state of Ohio to resolve certain

natural resource damage claims; and a March 2024 settlement with the city of Rome, Georgia to

resolve claims brought by residents of water districts in the area. (*Id.* PageID 6862.) Plaintiffs

argue such payments are unrelated to the cases at bar and no portion of them have been paid to

Plaintiffs for their specific injuries. (*Id.*)

DuPont agrees, stating it has "no intention of affirmatively introducing any [such]

evidence." Thus, Plaintiffs' Motion in Limine No. 16 is **DENIED AS MOOT**.

## V. PLAINTIFFS' MOTION IN LIMINE NO. 18 TO PRECLUDE DUPONT FROM INTRODUCING EVIDENCE OF CIGARETTE SMOKING AND LACK OF CANCERPHOBIA FROM NON-PROBABLE LINK CONDITIONS

In Motion in Limine No. 18, the parties argue about some of the same issue that they

argue about in Motion in Limine No. 9, discussed *supra*. Plaintiffs ask the Court to preclude

DuPont from introducing evidence "relating to cancerphobia from cigarette smoking or other

non-probable link conditions." (MiL No. 18, ECF No. 88.) Plaintiffs again cite Rules 401 and

403, urging that evidence about cancerphobia from cigarette smoking is not relevant to any facts

at issue and admission of such would do nothing other than mislead and confuse the jury. (*Id.*

PageID 6939–40.)

Plaintiffs assert that Mr. Hall's fear of cancer stems only from his exposure to C8, not

any other source including smoking. (*Id.* PageID 6941.) There is no relationship between

smoking and testicular cancer, Plaintiffs say. (*Id.*) Similar reasoning should exclude any

discussion of Mr. Hall's decision to have or not to have colonoscopies. (*Id.* PageID 6942.)

For its part, DuPont says evidence of Mr. Hall's smoking or refusal to obtain recommended colonoscopies bears on Mr. Hall's perception of cancer risk and emotional response (or lack thereof) to those risks. (MiL No. 18 Resp., ECF No. 104, PageID 7712.) It contends such evidence is relevant to Mr. Hall's health, damages, and his fear of cancer recurrence. (*Id.* PageID 7713.)

 "Cancerphobia is a claimed present injury consisting of mental anxiety and distress over contracting cancer in the future, as opposed to risk of cancer, which is a potential physical predisposition of developing cancer in the future." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1012 (6th Cir. 1993) (quoting *Lavelle*, 507 N.E.2d at 480). To be compensable, increased fear of cancer means that a "plaintiff is aware that he in fact possesses an increased statistical likelihood of developing cancer, and that from this knowledge springs a reasonable apprehension which manifests itself in mental distress." *Lavelle*, 507 N.E.2d at 480–81 (citations and footnote omitted). "Reasonable in this context is not equivalent to probability or certainty, but is for a fact-finder to determine." *Id.* Thus, Ohio law permits recovery for emotional distress that manifests itself as cancerphobia. (MDL 2433, DMO No. 20, ECF No. 4809, PageID 110263.)

This Court has previously opined on issues related to cancerphobia during the life of this MDL, but on a motion for summary judgment from DuPont. (*See* MDL 2433, DMO No. 20, ECF No. 4809 (*Vigneron*, Case No. 2:13-cv-136); MDL 2433, DMO No. 27, ECF No. 4990 (*Moody*, Case No. 2:15-cv-803).) When faced with a plaintiff's claim of fear of developing other Probable Link Diseases, the Court found that the "alleged mental distress and anxiety must be directly connected to the physical injury, (*i.e.*, here, Mr. Vigneron's cancer and metastasis of the cancer)." (DMO No. 20, PageID 110272.)

But DuPont is arguing something distinct here, on a different procedural posture. As it

states: "[a]n MDL plaintiff has never claimed, as Mr. Hall does here, that they have a form of cancerphobia linked only to their Probable Link Disease but no other form of cancer despite their knowledge of and lack of emotional response to the increased possibility of developing other cancer." (MiL No. 18 Resp., PageID 7715.) According to DuPont, Mr. Hall's medical history reflects that since 2015, he has smoked 11–20 cigarettes per day, smoking his first cigarette early in the morning. (*Id.* PageID 7713.) He has been advised of the risks of smoking by his primary care provider but continues to smoke. (ECF No. 104-1.) Mr. Hall was diagnosed with tobacco abuse in January 2022. (MiL No. 18 Resp., PageID 7713.) He also has a history of refusing to get colonoscopies. (ECF Nos. 104-1, 104-2.)

The Court is not convinced that this evidence is irrelevant. If Mr. Hall has to prove that he has mental stress and anxiety that his cancer from C8 exposure will return, evidence that he engages in other behaviors that increase his risk of contracting other types of cancer could be relevant to his mental state about and feelings surrounding developing cancer. Mr. Hall must put forth evidence that he had an actual fear or concern about the risk of cancer, *see Cantrell*, 999 F.2d at 1012, so evidence to the contrary is relevant to that determination. Indeed, that fear must be tied to the C8 exposure or his testicular cancer, but evidence that he is taking risks that increase the chances he could develop other forms of cancer is relevant to his mental state about cancer, generally.

Plaintiffs urge that even if the Court determines such evidence is relevant, the probative value is substantially outweighed by the danger of unfair prejudice because that evidence will prejudice the jury's ability to impartially render opinions on whether Mr. Hall's testicular cancer was caused by his C8 exposure. (MiL No. 18, PageID 6944.) Yet evidence can be admissible for one purpose and not another, and the Court can simply instruct the jury accordingly. Fed. R.

Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

Plaintiffs have not met the high standard of showing such evidence is clearly inadmissible. As a result, Motion in Limine No. 18 is **DENIED**.

## VI. CONCLUSION

The Court rules on Plaintiffs' Motions in Limine as follows:

- Motion in Limine No. 8 is **DENIED IN PART AS MOOT** and otherwise ruled on **IN ACCORDANCE WITH** this Court's previous rulings in this MDL on similar issues. (*Hall*, Case No. 2:23-cv-869, ECF No. 78; *Lynn*, Case No. 1:22-cv-751, ECF No. 81.)

- Motion in Limine No. 9 is **DENIED AS MOOT**. (*Hall*, Case No. 2:23-cv-869, ECF No. 79; *Lynn*, Case No. 1:22-cv-751, ECF No. 82.)

- Motion in Limine No. 16 is **DENIED AS MOOT**. (*Hall*, Case No. 2:23-cv-869, ECF No. 86; *Lynn*, Case No. 1:22-cv-751, ECF No. 89.)

- Motion in Limine No. 18 is **DENIED**. (*Hall*, Case No. 2:23-cv-869, ECF No. 88; *Lynn*, Case No. 1:22-cv-751, ECF No. 91.)

The Clerk is directed to file this Motions in Limine Order on the *Hall* docket, Case No. 2:23-cv-869, and the *Lynn* docket, Case No. 1:22-cv-751, but not the main MDL 2433 docket.

**IT IS SO ORDERED.**

**8/22/2024**                                  **s/Edmund A. Sargus, Jr.**
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**