UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: E. I. DU PONT DE NEMOURS
AND COMPANY C-8 PERSONAL
INJURY LITIGATION

Case No. 2:13-md-2433
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth A. Preston Deavers

**This document relates to:**
*Joseph and Donna Hall v. E. I. du Pont de Nemours and Co.,* Case No. 2:23-cv-869
*Ian and Heather Lynn v. E. I. du Pont de Nemours and Co.,* Case No. 1:22-cv-751

## EVIDENTIARY MOTIONS ORDER

**Plaintiffs' Motion to Exclude the Opinions and Testimony of Defense Expert Steven Washburn (*Hall*, Case No. 2:23-cv-869, ECF No. 22; *Lynn*, Case No. 1:22-cv-751, ECF No. 26); Plaintiffs' Preservation Motion in Limine No. 5 to Preclude Irrelevant Opinions of DuPont's Expert, Stephen T. Washburn (*Hall*, Case No. 2:23-cv-869, ECF No. 75; *Lynn*, Case No. 1:22-cv-751, ECF No. 78)**

Before the Court are two related motions from Plaintiffs: a Motion to Exclude the Opinions and Testimony of Defense Expert Steven Washburn (*Hall*, Case No. 2:23-cv-869, *Daubert* Mot., ECF No. 22; *Lynn*, Case No. 1:22-cv-751, ECF No. 26), and a Preservation Motion in Limine No. 5 to Preclude Irrelevant Opinions of Defendant E.I. du Pont de Nemours and Company's ("DuPont") Expert, Stephen T. Washburn (*Hall*, MiL No. 5, ECF No. 75; *Lynn*, ECF No. 78.)[1] DuPont opposed the *Daubert* Motion (Resp., ECF No. 49), and Plaintiffs filed a reply (Reply, ECF No. 56). DuPont also opposed Motion in Limine No. 5. (ECF No. 98.)

For the reasons stated below, the *Daubert* Motion is **HELD IN ABEYANCE in part** and **GRANTED in part.** Motion in Limine No. 5 is **DENIED AS MOOT in part** and otherwise

---

[1] Because Plaintiffs filed the same Motion in the *Hall* and *Lynn* cases, the Court cites only to the *Hall* papers throughout the remainder of this Order unless otherwise noted.

ruled on in accordance with the *Daubert* Motion.

## I. BACKGROUND

The Court assumes the reader's familiarity with this multi-district litigation ("MDL 2433") that began in 2013 as a result of DuPont's discharge of C-8, or perfluorooctanoic acid (PFOA), into the Ohio River, landfills, and air surrounding its plant in West Virginia. The Court provides only the background information necessary to understand the issues raised in Plaintiffs' Motions. A comprehensive account of the history surrounding DuPont's discharges of C-8 and the lengthy litigation that has ensued is available in *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 916–21 (6th Cir. 2022), *cert. denied sub nom. E. I. du Pont de Nemours & Co. v. Abbott*, 144 S. Ct. 16, 217 L. Ed. 2d 229 (2023).

### A. The Halls and Their Lawsuit

Joseph Hall and his spouse, Donna Hall, brought their lawsuit on March 3, 2023. (Compl., ECF No. 1.) They allege that Mr. Hall resided and worked in at least one of the contaminated water districts including the City of Little Hocking, Ohio and Little Hocking Water Association, Ohio ("LHWA") in or around 1999 and consumed water contaminated with C-8 at greater than 0.05 ppb for at least a year before December 3, 2004. (*Id.* ¶ 8.) As a result of his water consumption, Plaintiffs allege Mr. Hall was diagnosed with testicular cancer on February 10, 2022, and sustained severe and permanent personal injuries, pain, suffering, and emotional distress. (*Id.* ¶ 9.)

Plaintiffs brought causes of action against DuPont for negligence; concealment, misrepresentation, and fraud; negligent and intentional infliction of emotional distress; punitive damages; and loss of consortium. (*Id.* ¶¶ 157–204.) Since the complaint was filed, Plaintiffs filed a notice of dismissal under Federal Rule of Civil Procedure 41(a)(1)(A) of Plaintiffs' claim for concealment, misrepresentation, and fraud. (ECF No. 7.) Because the notice did not dismiss all

claims, the Court construed the notice as a joint motion to sever under Federal Rule of Civil Procedure 21, granted the motion, and dismissed the second cause of action without prejudice. (ECF No. 9.) The Court recently granted a similar motion dismissing Plaintiffs' loss of consortium claim (ECF No. 114), and Plaintiffs represented at the final pretrial conference that they also would move to sever and dismiss their claim for negligent and intentional infliction of emotional distress (ECF No. 121).

### B. The Lynns and Their Lawsuit

Ian Lynn and his spouse, Heather Lynn, brought their lawsuit on December 16, 2022. (*Lynn*, Compl., ECF No. 1.) They allege that Mr. Lynn resided and worked in at least one of the contaminated water districts including the City of Belpre, Ohio and LHWA in or around 1989 and consumed water contaminated with C-8 at greater than 0.05 ppb for at least a year before December 3, 2004. (*Id.* ¶ 8.) As a result of his water consumption, Plaintiffs allege Mr. Lynn was diagnosed with testicular cancer on April 22, 2021, and sustained severe and permanent personal injuries, pain, suffering, and emotional distress. (*Id.* ¶ 9.)

Plaintiffs brought causes of action against DuPont for negligence; concealment, misrepresentation, and fraud; negligent and intentional infliction of emotional distress; punitive damages; and loss of consortium. (*Id.* ¶¶ 157–204.) As in *Hall*, the Court granted the parties' joint motion to sever and dismissed Plaintiffs' claim for concealment, misrepresentation, and fraud. (*Lynn*, ECF Nos. 11, 13.) Plaintiffs' loss of consortium claim has also been dismissed (*Lynn*, ECF No. 114), and the Court anticipates the negligent and intentional infliction of emotional distress claim will be dismissed based on Plaintiffs' representations during the Final Pretrial Conference (*Lynn*, ECF No. 121).

## II. *DAUBERT* MOTION

Plaintiffs request that the Court exclude the opinions and testimony of defense expert

Stephen Washburn, arguing that he offers irrelevant and prohibited general causation opinions, and "general lay opinions dressed up as expert analysis," which fail to meet the requirements of Federal Rule of Evidence 702. (*Daubert* Mot., ECF No. 22, PageID 541.)

### A. Standard of Review

Evidentiary rulings are made subject to the district court's sound discretion, *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019), including the admissibility of expert testimony, *United States v. Dunnican*, 961 F.3d 859, 875 (6th Cir. 2020). This role, however, is not intended to supplant the adversary system or the role of the jury. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531–32 (6th Cir. 2008). Arguments about the weight to be given to any testimony or opinions of an expert witness are properly left to the jury. *Id*. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). The party offering the expert opinions and testimony bears the burden to demonstrate "by a preponderance of proof" that the expert evidence is admissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

The district court's role in assessing expert testimony is a "gatekeeping" one, ensuring that only admissible expert testimony is submitted to the jury; the court's role is not to weigh the expert testimony or determine its truth. *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (quoting *Daubert*, 509 U.S. at 597). Expert testimony, *i.e.*, opinion testimony given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," is admissible if the proponent demonstrates by a preponderance of the evidence that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

4

>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In this Circuit, "[t]he Rule 702 analysis proceeds in three stages." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016). "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702).

First, an expert witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). "[T]he only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). "The weight of the expert's testimony must be for the trier of fact." *Id.* A party's expert need only meet the "'minimal qualifications' requirement—not one who could teach a graduate seminar on the subject." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014) (quoting *Mannino*, 650 F.2d at 851); *see also Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 446 (6th Cir. 2012) ("An expert's lack of experience in a particular subject matter does not render him unqualified so long as his general knowledge in the field can assist the trier of fact.").

Second, expert testimony must be relevant, *i.e.*, it must "help the trier of fact to

5

understand the evidence or to determine a fact in issue." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015) (quoting *United States v. Freeman*, 730 F.3d 590, 599–600 (6th Cir. 2013)); Fed. R. Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], p. 702–18 (1988)). "This requirement has been interpreted to mean that scientific testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592). This is a case specific inquiry. *Madej*, 951 F.3d at 370 ("Whether an opinion 'relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court.").

Third, expert testimony must be reliable. Rule 702 provides the following general standards to assess reliability: whether "the testimony is based on sufficient facts or data," whether "the testimony is the product of reliable principles and methods," and whether "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). To evaluate reliability of principles and methods, courts consider "'testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community,'" though these "factors 'are not dispositive in every case' and should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" *In re Scrap Metal*, 527 F.3d at 529 (citations omitted); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (describing these factors as "flexible") (quoting *Daubert*, 509 U.S. at 594). The objective of the reliability requirement is to "make certain that an expert, whether basing testimony upon

6

professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

### B. Analysis

Mr. Washburn is the principal of an environmental and health science consulting firm. (Washburn Expert Report - Hall, ECF No. 22-3, PageID 638; *see also* Washburn Expert Report - Lynn, ECF No. 22-2.) He is an environmental professional with more than 35 years of experience and expertise in contaminant fate and transport, exposure assessment, and risk assessment. (Washburn Expert Report - Hall, ECF No. 22-3, PageID 638.) Mr. Washburn represents in his expert reports that he was asked to "evaluate and provide historical context" as to Plaintiffs' claimed exposures to PFOA in drinking water provided by the LHWA and City of Belpre that Dr. David MacIntosh (Plaintiffs' class membership expert) relied on in his opinion on the Plaintiffs' *Leach* class membership status. (*Id.*) Mr. Washburn was also asked to review and express opinions on Dr. MacIntosh's expert reports. (*Id.*)

According to Plaintiffs, Mr. Washburn's expert reports (1) are an improper attack on general causation and thus irrelevant (*Daubert* Mot. PageID 541); and (2) should be excluded because Mr. Washburn did not do independent testing, failed to create models to interpret underlying studies, and "did nothing more than collate publicly available data" (*id.* PageID 564). DuPont responds that Mr. Washburn is offering opinions in these cases that (1) rebut the opinions of Dr. MacIntosh or (2) relate to corporate conduct to dispute evidence of punitive damages. (Resp. PageID 4670–71.)

1. *Mr. Washburn as a Rebuttal Expert to Dr. MacIntosh*

Plaintiffs argue that Mr. Washburn's reports and testimony are irrelevant because of the

7

*Leach* Settlement Agreement.[2] Under that Agreement, DuPont contractually waived its right to challenge whether "it is probable that exposure to C-8 is capable of causing a particular Human Disease"—general causation. (*Daubert* Mot. PageID 544–45 (citing MDL 2433, DMO No. 1, ECF No. 1679, PageID 22977).) Because of this agreement, Plaintiffs say, DuPont is barred from attacking the Science Panel's findings or preventing a class member from reaping the benefit of the Probable Link Finding,[3] regardless of his or her exposure grouping. (*Daubert* Mot. PageID 544–45.) According to Plaintiffs, general causation is not a fact issue, and Mr. Washburn's opinions on general causation will not help the trier of fact. (*Id.*; *see also id.* PageID 546–63.)

DuPont responds that Plaintiffs are not making case-specific arguments; instead, they are repeating old arguments they made in the *Abbott* and *Swartz* cases, even though Mr. Washburn's reports are offered for new purposes, pertain to issues unique to the instant cases, and relate to different plaintiffs—Mr. Hall and Mr. Lynn. (Resp. PageID 4669.) DuPont explains that Mr. Washburn's opinions are being offered to rebut Dr. MacIntosh and urges that to the extent that Dr. MacIntosh is permitted to testify and offer opinions at trial, Mr. Washburn should be permitted to rebut that testimony. (*Id.* PageID 4670.)

In Evidentiary Motions Order 34, Mr. Washburn was precluded from offering testimony in the *Abbott* and *Swartz* trials. (*Swartz*, 2:18-cv-00136, EMO No. 34, ECF No. 144.) There, DuPont offered Mr. Washburn to "render opinions related to Mrs. Swartz's C-8 exposure and DuPont's historical ability to assess the risk of harm to her from that exposure." (*Id.* PageID

---

[2] For a complete summary of the *Leach* class action and Settlement Agreement, see the Dispositive Motions Order on the Motion for Summary Judgment on *Leach* Class Membership. (ECF No. 106.)

[3] "Probable Link" means that "based upon the weight of the available scientific evidence, it is more likely than not that there is a link between exposure to C-8 and a particular Human Disease among Class Members." (ECF No. 106, PageID 7748) (citing MDL 2433, S.A., ECF No. 520-8, § 1.49.)

8

6322.) Mr. Washburn offered similar opinions in the *Abbott* case. (*Id.* PageID 6324.) The Court found that Mr. Washburn's opinions should be excluded, finding that through Mr. Washburn, DuPont sought to:

> attack two *Leach* Class members' level of exposure (Mrs. Swartz and Mr. Abbott) in comparison to the broader Science Panel Study to show they are at less risk than other *Leach* Class members. As Plaintiffs correctly conclude, this is the exact same "quartile" argument without the word "quartile" which was previously excluded by the Court. Mr. Washburn cannot provide opinions and/or testimony for the purpose of showing that Mrs. Swartz and Mr. Abbott are at a more decreased risk of injury than the defined Probable Link Finding solely because of their quartile exposure placement.

(*Id.* PageID 6329.)

But DuPont contends Mr. Washburn's opinions are offered for a distinct purpose here—to rebut Dr. MacIntosh's opinions on *Leach* class membership. DuPont also explains Mr. Washburn's opinions are different in these cases. He is not offering opinions, for example, on: whether Plaintiffs are at a decreased risk of injury solely because of their quartile exposure placement; the risk of harm to Plaintiffs from C-8 exposure or weighing competing risks; or the reasonableness of the 0.05 ppb threshold. (Resp. PageID 4673–74.)

However, both Mr. Lynn and Mr. Hall are members of the *Leach* class. The *Leach* class membership issue has been resolved. DuPont did not contest Mr. Lynn's *Leach* class membership. DuPont did contest Mr. Hall's *Leach* class membership, but this Court found that there was no genuine issue of material fact as to Mr. Hall's requisite LHWA water consumption. (DMO, ECF No. 106, PageID 7754.)

Nevertheless, as the Court recently said in an Evidentiary Motions Order on DuPont's Motion to Exclude Dr. MacIntosh's testimony and opinions—consistent with its rulings in previous MDL 2433 cases—Dr. MacIntosh may still testify if Plaintiffs choose even though *Leach* class membership is not an issue in dispute. (EMO, ECF No. 69, PageID 5376; *see also*

9

MDL 2433, ECF No. 4527, p. 35–37 (rejecting the argument that because Mr. Freeman's *Leach* class membership was not an issue in dispute, there shouldn't be any testimony on it from Dr. MacIntosh).) This Court has explained that: "a syllogism is not a story . . . one side can't stipulate away part of the other side's case." (MDL 2433, ECF No. 4527, p. 36); *see Old Chief v. United States,* 519 U.S. 172, 189 (1997). Yet the parties and the Court must be mindful of "issues of wasted time, cumulative evidence." (*Id.*)

The Court **HOLDS IN ABEYANCE** its decision on whether Mr. Washburn's expert reports and testimony can be offered to rebut Dr. MacIntosh's expert reports and testimony. Mr. Washburn does opine that Dr. MacIntosh failed to rely on sufficient corroborating evidence to support his conclusions on Plaintiffs' class members status and claimed qualifying exposure (Resp. PageID 4675), and evidence that is "directly responsive" to the other party's legal theory is properly admissible, *see Peabody v. Perry Twp.*, Ohio, No. 2:10-CV-01078, 2013 WL 164504, at *3 (S.D. Ohio Jan. 15, 2013). However, as discussed above, issues related Mr. Hall's and Mr. Lynn's *Leach* class membership are no longer in dispute. As this Court has explained in past MDL 2433 cases, if *Leach* class membership is not disputed, Plaintiffs can prove it but must "be very efficient." (MDL 2433, ECF No. 4527, p. 37.) If Plaintiffs chose to offer Dr. MacIntosh as an expert, Dupont may be able to offer Mr. Washburn to rebut Dr. MacIntosh. The Court holds in abeyance its ruling until the testimony comes out during trial.

2. *Mr. Washburn as a Corporate Conduct Expert*

"To prove punitive damages, Plaintiffs must show that DuPont's behavior in releasing the C-8 into the environment exhibited a conscious disregard for the rights and safety of persons that had a great probability of causing substantial harm." (*Swartz*, 2:18-cv-00136, EMO No. 34, ECF No. 144.) So the reasonableness of DuPont's conduct is relevant to the punitive damages claim.

(*Id.* PageID 6325.) DuPont explains that in addition to rebuttal opinions, Mr. Washburn offers "affirmative opinions regarding the reasonableness of the community exposure guideline historically set by DuPont and the state of the science regarding how PFOA moved through the environment when that guideline was set." (Resp. PageID 4679.) DuPont says those opinions relate to corporate conduct to dispute evidence of punitive damages. (Resp. PageID 4670–71.)

Plaintiffs attack the reliability of Mr. Washburn's corporate conduct testimony. They contend that Mr. Washburn is not the "right individual to testify on the reasonableness of" DuPont's corporate conduct as he cannot give a "foundational understanding and examination of the company's actual conduct and knowledge" and does "not have the requisite factual basis to establish what the company knew." (Reply PageID 4857–58.) Plaintiffs assert that the gap between the testimony DuPont seeks to have Mr. Washburn provide on what he thinks was reasonable based on publicly available scientific knowledge versus what DuPont internally knew (e.g. "company animal testing data, corporate medical director warnings, communications with 3M on hazards," etc.) is too wide. (*Id.* PageID 4858–59) The proper defense witness (or witnesses) to testimony on this topic is (or are) those that have been brought at previous trials such as Playtis, Fedoruk, Cooper, Reilly, Rickard, say Plaintiffs. (*Id.*)

DuPont characterizes Plaintiffs' attempt to discredit Mr. Washburn's reports as seeking a requirement of employment at DuPont—a requirement that Plaintiffs' own experts do not meet. (Resp. PageID 4671.) If an expert had to be previously employed by DuPont to testify to the reasonableness of DuPont's conduct, Plaintiffs' proffered corporate conduct experts, Stephen Petty and Steven Amter, would be out. (*Id.*)

In EMO 34, this Court disagreed with DuPont's position that Mr. Washburn's report and testimony informed the reasonableness inquiry into DuPont's conduct. (*Swartz*, 2:18-cv-00136,

11

EMO No. 34, ECF No. 144, PageID 6325.) The Court found that "to inform DuPont's historical ability to assess the risk of harm to any plaintiff, Mr. Washburn would have to know what it was that DuPont historically knew, which he does not." (*Id.*) This Court went on to explain that Mr. Washburn's comparison of the amount of C-8 in the water Plaintiffs drank to standards set by other agencies "does nothing to inform whether DuPont was aware of any of [the Community Exposure Guidelines ("CEG")] when it made its decisions about releasing the C-8 from Washington Works or why it set its [Guidelines]." (*Id.* PageID 6352.) The Court continued on:

> Nor could Mr. Washburn testify as to what DuPont knew with regard to the monitoring of persons blood, toxicology or other studies in which DuPont or its laboratories engaged, or what DuPont knew or did not know about information that was available in the national and international public sphere.
>
> DuPont, however, offers an abundance of testimony related to the relevant inquiry of what it knew, when it knew it, and what it did with the information through numerous qualified experts and fact witnesses who were employed by or worked with DuPont during the relevant time period.
>
> For example, Robert W. Rickard, Ph.D., D.A.B.T., has offered expert reports and testimony. Dr. Rickard is employed by DuPont and holds the position of Distinguished Scientist, Health & Environmental Sciences. Dr. Rickard testified in all four trials held in this MDL at length about what DuPont knew about C-8 from decades of toxicological studies and other research about which DuPont knew and/or performed at its own laboratories. Dr. Rickard was qualified to and did testify as to why the CEG was set, and what DuPont knew of the data from CATT, WVDEP, and USEPA. Dr. Rickard offers this same evidence in *Swartz* and *Abbott.*

(*Id.*) Dr. Rickard is on DuPont's witness list in these cases too.

DuPont asserts Mr. Washburn's reports are different from the report offered in *Abbott* and *Swartz* because DuPont provided Mr. Washburn with documents and information he didn't previously consider. (Resp. PageID 4679.) For example, Mr. Washburn considered "internal DuPont documents and expert reports and testimony from Robert Rickard and Marion J. Fedoruk." (*Id.* PageID 4680.) But review and summary of other DuPont corporate conduct experts reports and testimony doesn't render Mr. Washburn an expert on such matters himself.

12

Moreover, this increases the risk that Mr. Washburn's testimony would be needlessly cumulative. Fed. R. Evid. 403.

Turning to DuPont's fairness argument—that Plaintiffs seek to impose requirements on Mr. Washburn that their own experts do not meet (Resp. PageID 4671)—Plaintiffs do suggest that Mr. Washburn could have developed a foundational understanding of the company's actual conduct and knowledge through employment or presence at DuPont, but do not argue that prior employment is the only way to develop such a basis. Further, there was nothing preventing DuPont from making such arguments through pretrial motions. Nor is there anything preventing DuPont from making such arguments if opportunity arises at trial, during sidebar.

Plaintiffs' *Daubert* Motion is **GRANTED** to the extent to seeks to exclude Mr. Washburn as a corporate conduct expert.

### III.    MOTION IN LIMINE NO. 5

In their fifth Motion in Limine, Plaintiffs ask the Court to preclude Mr. Washburn from testifying and DuPont from offering any evidence or argument from Mr. Washburn's expert reports that challenges general causation or the work of the Science Panel. (MiL No. 5.)

#### A.  Standard of Review

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984).

Motions in limine allow the Court to rule on the admissibility of evidence before trial to expedite proceedings and provide the parties with notice of the evidence on which they may not rely to prove their case. *Bennett v. Bd. of Educ. of Washington Cnty. Joint Vocational Sch. Dist.*,

C2-08-CV-0663, 2011 WL 4753414, at * 1 (S.D. Ohio Oct. 7, 2011) (Marbley, J.). To prevail on a motion in limine, the movant must show that the evidence is clearly inadmissible. *Id.* If the movant fails to meet this high standard, the Court should defer evidentiary rulings so that questions of foundation, relevancy, and potential prejudice may be resolved in the context of trial. *Henricks v. Pickaway Corr. Inst.*, No. 2:08-CV-580, 2016 WL 4577800, at *2 (S.D. Ohio Sept. 2, 2016) (Marbley, J.).

Whether to grant a motion in limine is within the discretion of the trial court; the Court may reconsider the admissibility of evidence and even change its ruling on a motion in limine "as the proceedings give context to the pretrial objections." *Id.* (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012); *Bennett*, 2011 WL 4753414, at * 1.)

B. Analysis

Quoting various portions of Mr. Washburn's report, Plaintiffs argue Mr. Washburn seeks to challenge general causation and the work of the Science Panel; thus, his testimony and opinions are irrelevant or prejudicial, would waste the Court's time, cause undue delay, and confuse the jury. (*Id.* PageID 5563–66.) Plaintiffs note, however, similar motions in limine about Mr. Washburn in previous MDL 2433 trials have been found to be moot after DuPont agreed not to use any of Mr. Washburn's opinions or testimony to attack general causation or the Science Panel's findings. (*Id.* PageID 5557 n.1 (citing the *Bartlett*, *Freeman*, *Vigneron*, *Moody*, *Abbott*, and *Swartz* cases and docket entries); *see* ECF Nos. 75-1–75-5.)

In response, DuPont states that similar to in past MDL 2433 trials, it has "no intention of challenging the objective criteria and/or protocols utilized by the Science Panel." (ECF No. 98, PageID 7396 (cleaned up).) Plaintiffs' Motion in Limine No. 5 is therefore **DENIED AS MOOT in part.**

To the extent the parties' arguments go further and restate their positions in the *Daubert*

14

Motion on Mr. Washburn, the Court rules in accordance with its ruling on that Motion above.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Exclude the Opinions and Testimony of Defense Expert Steven Washburn (*Hall*, Case No. 2:23-cv-869, ECF No. 22; *Lynn*, Case No. 1:22-cv-751, ECF No. 26) is **HELD IN ABEYANCE in part** and **GRANTED in part**. Plaintiffs' Preservation Motion in Limine No. 5 to Preclude Irrelevant Opinions of DuPont's Expert, Stephen T. Washburn (*Hall*, ECF No. 75; *Lynn*, ECF No. 78) is **DENIED AS MOOT in part** and otherwise ruled on in accordance with the *Daubert* Motion on Mr. Washburn.

The Clerk is directed to file this Evidentiary Motions Order in *Hall* and *Lynn*, but not in the main MDL.

**IT IS SO ORDERED.**

**9/5/2024**                                                     s/Edmund A. Sargus, Jr.
**DATE**                                                      **EDMUND A. SARGUS, JR.**
                                                                **UNITED STATES DISTRICT JUDGE**